CHARLES McVEY v. STATE OF NEBRASKA.

FILED SEPTEMBER 23, 1898.  No. 9883.

1. **Witnesses:** IMPEACHMENT. Preliminary to the impeachment of a witness because of inconsistent statements made at a previous time, the attention of the witness should be called to the time and place where such alleged statements had been made.

2. ——: ——. If it is sought to impeach a witness because she is a prostitute, inquiry should be made as to that fact, and not with reference to habits which are not characteristics peculiar to prostitutes alone.

3. **Criminal Law:** PRESUMPTION OF INNOCENCE. Instruction examined, and *held* not to state that the presumption of innocence exists in favor of the accused when no evidence has been introduced.

ERROR to the district court for Douglas county. Tried below before BAKER, J. *Affirmed.*

*W. S. Shoemaker*, for plaintiff in error.

*C. J. Smyth, Attorney General*, and *Ed P. Smith, Deputy Attorney General*, for the state.

Ryan, C.

In the district court of Douglas county Charles McVey was convicted of feloniously stealing from the person of Rosa Schmidt, without threats of violence, certain described property and money of the aggregate value of $14 and was sentenced to imprisonment in the penitentiary for a period of three years. The alleged errors of which he makes complaint in this court shall now be considered, though it may be well to premise that the evidence was amply sufficient to justify the verdict of the jury.

Minnie Sauers, a married woman, had testified to seeing the accused commit the offense with which he was charged. On cross-examination she was asked whether or not she frequented wine rooms. An objection that this was incompetent, immaterial, and irrelevant was sustained, and it is now insisted that this was prejudicially erroneous, for the reason that if an answer had been made to the question, it would have been followed by others which would have shown that the witness not only frequented wine rooms, but, as we understand it, solicited patronage as a prostitute. If this was the character of this woman, and by reason of this fact it was intended to impeach her credibility, there should have been propounded questions bearing directly upon that fact, if it existed. We cannot assume that if the inquiry had been permitted as to whether or not this witness frequented wine rooms, her answer would have justified other inquiries damaging to her credibility. At most, the question, on the theory of plaintiff in error, was but introductory. The material questions should have been propounded, and their effect not left to mere conjecture based upon mere assumption.

It was sought to impeach the testimony of Mrs. Schmidt by showing that shortly after her pocket had been picked she had said she thought Mr. McVey was the culprit, but would not say so positively. Her at-

tention, on direct examination, had not been directed to the time and place and in whose presence these statements had been made. There was, therefore, no proper foundation for her impeachment on this line, and the district court committed no error in its ruling on this point.

It is urged that the court improperly asked questions of different witnesses, but, as there was no objection, ruling, or exception as to any question thus propounded, we cannot say there was error by reason of the part thus taken in the trial by the court.

There were objections urged to the ruling of the court refusing to permit witnesses to answer immaterial questions—for instance, whether one had filed an information; whether another was as sure the accused wore a light hat as that the person whom the witness had identified was the accused; what a witness saw witness doing at a certain time and place, the question being clearly intended to fix such time and place as introductory to testimony directly connecting the accused with the commission of the offense charged. It would be a needless consumption of time to consider these matters to the extent argued. Our estimate of their lack of materiality has already been sufficiently indicated.

There was evidence that two officers, shortly after the commission of the offense charged, had unsuccessfully attempted to find McVey in Omaha, but this we do not regard as specially important in view of the fact that Mrs. McVey, the mother of the accused, admitted on her cross-examination that he left Omaha on the morning of the day the offense was committed and did not return for four weeks thereafter. The testimony of the officers but slightly justified the inference of guilt from flight, but the admission of the mother rendered it quite likely that the absence of the accused was attributable to his own guilty consciousness. There was no error in admitting the testimony of the officers for whatever it was worth. The objections to the introduction of testi-

mony have been noted separately, or are of the general nature which has been noted.

In respect to a part of an instruction, exception was taken to this language: "And if no evidence was introduced, under the presumption of innocence you should acquit him." It is argued that the language just quoted admits the force and effect of the presumption of innocence to cases where no evidence is introduced on either side. As it is admitted that this language, if it stood alone, would be proper, but it is claimed that in the connection in which it occurs it is erroneous, we quote the entire instruction: "The law presumes the defendant innocent until he is proved guilty beyond a reasonable doubt. This presumption partakes of the nature of evidence, and if no evidence was introduced, under the presumption of innocence you should acquit him; and this presumption continues throughout the trial until he has been proven guilty beyond a reasonable doubt. The defendant has been arraigned on the information in this case, and has pleaded not guilty. The plea of not guilty casts upon the state the burden of establishing by evidence all the material allegations in the information as herein explained by the court, beyond a reasonable doubt, before you would be warranted in returning a verdict of guilty against him." It is quite probable that nothing was gained by stating what the rule would be if no evidence had been introduced, for no such conditions confronted the jury; but this part of the instruction we regard as being but a rhetorical flourish which in no way could have harmed the accused. The jury must have understood from the instruction as an entirety that the law presumed the defendant innocent, and that his guilt, if it existed, must be established by such weight of evidence as left no reasonable doubt thereof in the minds of the jurors. There are found no errors in the record prejudicial to the plaintiff in error, and the judgment of the district court is

AFFIRMED.